## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| ONENINE DESIGN LLC, a Texas limited liability company, | |
| Plaintiff, | Case No. 3:25-cv-00831 |
| | Honorable Judge William L. Campbell Jr. |
| v. | Magistrate Judge Jeffrey S. Frensley |
| THE GORDON LAW GROUP, LTD., an Illinois corporation, d/b/a gordon law Defendant. | |

### THE GORDON LAW GROUP, LTD.'S ANSWER AND COUNTER-CLAIMS

The Gordon Law Group, Ltd. ("Gordon Law" or "Defendant") responds to Plaintiff, OneNine Design LLC's (hereinafter referred to as "Plaintiff" or "OneNine") Complaint as follows:

### JURISDICTION AND VENUE

1.      This action arises under the Copyright Act of 1976, Title 17 U.S.C., § 101 *et seq.,* and Tennessee state law.

**ANSWER:** Defendant admits that this case purports to arise under the Copyright Act of 1976, Title 17 U.S.C. § 101 *et seq.*, and Tennessee state law, but denies that any of the aforesaid claims have merit. Additionally, the paragraph calls for a legal conclusion to which no response is required. To the extent a response is required, Defendant denies the remaining allegations of Paragraph 1.

2.      This Court has federal question jurisdiction under 28 U.S.C. §§ 1331 and 1338 (a) and (b).

**ANSWER:** Defendant lacks knowledge or sufficient information to admit or deny the allegations of Paragraph 2 and therefore denies the same.

3.     Venue in this judicial district is proper under 28 U.S.C. § 1391(c) and 1400(a) in that this is the judicial district in which a substantial part of the acts and omissions giving rise to the claims occurred.

**ANSWER:** Deny.

4.     Jurisdiction and venue are additionally proper in this Court pursuant to the governing law and venue clause of the contract at issue, which provides that "[t]he exclusive venue for any disputes arising out of this Agreement or the performance of this Agreement shall be in a court of competent jurisdiction in Nashville, Tennessee, and both parties expressly consent to jurisdiction in such courts."

**ANSWER:** The allegations of Paragraph 4 concerning the "contract at issue," its existence, validity, and what it purports to state and establish, all call for legal conclusions for which a response is not required. To the extent a response is required, Defendant denies the allegations of Paragraph 4.

## PARTIES

5.     OneNine is a Texas limited liability company with a place of business at 613 Ewing Avenue, Nashville, TN 37203. Nathan Ruff, the president of OneNine and signatory on the Agreement that is the subject of this action, also resides in Nashville, TN.

**ANSWER:** Defendant lacks knowledge or sufficient information to admit or deny the allegations of Paragraph 5 and therefore denies the same.

6.      On information and belief, Gordon Law is an Illinois corporation.

**ANSWER:** Defendant admits it is an Illinois corporation.

## CLAIMS RELATED TO THE SUBJECT PHOTOGRAPHS AND THE PARTIES' AGREEMENT

7.     OneNine is a brand development and management firm that specializes in creating custom web designs and visual branding for its clients.

**ANSWER:** Defendant lacks knowledge or sufficient information to admit or deny the allegations of Paragraph 7 and therefore denies the same.

8.     On information and belief, Gordon Law is a crypto, tax, and business law firm owned and operated by attorney Andrew Gordon, who is also the registered agent, president, secretary, and director of Gordon Law.

**ANSWER:** Admit.

9.     In 2023, Gordon Law approached OneNine about hiring OneNine to undertake a visual branding and website redesign for Gordon Law.

**ANSWER:** Admit.

10.     OneNine accordingly provided Gordon Law with a written proposal for the redesign project, providing numerous details of what the project would entail and informing Gordon Law that the project would require a payment to OneNine of $40,000.

**ANSWER:** Admit that OneNine provided Gordon Law with a written proposal but Deny the rest.

11.     On January 9, 2024, OneNine and Gordon Law entered into a service agreement (the "Agreement"), under which OneNine would provide a redesigned website for Gordon Law in exchange for a total agreed upon price of $40,000 ("Final Payment").

**ANSWER:** Defendant admits OneNine and Defendant signed a document titled "Service Agreement." Defendant denies the remaining allegations of Paragraph 11.

12.     The Agreement was executed by OneNine's president, Nathan Ruff, and Gordon

Law's president, Andrew Gordon, on behalf of their respective companies.

**ANSWER:** Defendant admits the Service Agreement was signed by Nathan Ruff and Andrew Gordon on behalf of their respective companies. Defendant denies the remaining allegations of Paragraph 12.

13.     The Agreement expressly required that Gordon Law make the Final Payment in two installments, "$20,000 USD at the signing of [the Agreement]" and thereafter that "Gordon Law will pay the remaining $20,000 USD when the project is done."

**ANSWER:** Deny.

14.     The Agreement further expressly provided that the copyrights for any content or graphics created by OneNine for Gordon Law under the Agreement would only transfer from OneNine to Gordon Law "upon receipt of the final payment."

**ANSWER:** The allegations of this Paragraph 14 call for legal conclusions for which a response is not required. The document titled "Service Agreement" speaks for itself. To extent a response is required, Defendant denies the allegations of this Paragraph 14.

15.     The Agreement also included an Attorneys Fees clause, stating that "In any legal action between the parties concerning this Agreement, the prevailing party shall be entitled to recover reasonable attorneys' fees and costs."

**ANSWER:** The allegations of this Paragraph 15 call for legal conclusions for which a response is not required. The document titled "Service Agreement" speaks for itself. To extent a response is required, Defendant denies the allegations of this Paragraph 15.

16.     OneNine and Gordon Law likewise agreed in the Agreement that "Once this Agreement is signed and dated by Gordon Law it cannot be modified without the approval of both parties to this Agreement."

**ANSWER:** The allegations of this Paragraph 16 call for legal conclusions for which a response is not required. The document titled "Service Agreement" speaks for itself. To extent a response is required, Defendant denies the allegations of this Paragraph 16.

17. In the course of working on the redesign project pursuant to the Agreement, OneNine's contractor created original photographs of Andrew Gordon and other lawyers and scenes related to Defendant's law firm ('Subject Photographs").

**ANSWER:** Defendant lacks knowledge or sufficient information to admit or deny the allegations of Paragraph 17 and therefore denies the same.

18. "Subject Photographs" as used herein will refer to all photographs that Gordon Law obtained from Plaintiff and used without Plaintiffs consent.

**ANSWER:** Defendant states that this allegation contains a definition which speaks for itself. Defendant denies the remaining allegations of this Paragraph 18.

19. OneNine's contractor transferred all rights and claims relevant to the Subject Photographs, including without limitation, registered copyrights, to OneNine.

**ANSWER:** Defendant lacks knowledge or sufficient information to admit or deny the allegations of Paragraph 19 and therefore denies the same.

20. OneNine has standing to bring the claims set forth herein as a result of its ownership of the Subject Photographs and the registered copyrights attendant thereto.

**ANSWER:** Defendant lacks knowledge or sufficient information to admit or deny the allegations of Paragraph 20 and therefore denies the same.

21. OneNine completed performance of all its duties and obligations under the Agreement by creating a website for Gordon Law and providing same to Gordon Law, including the Subject Photographs. This performance met or exceeded industry standards.

**ANSWER:** Deny.

22.     Gordon Law paid the first $20,000 installment required under the Agreement but refused to pay the second $20,000 after OneNine's delivery of the redesigned website and thus Gordon Law failed to deliver the Final Payment and thus received no rights in or to any of the content or graphics created by OneNine, including the Subject Photographs.

**ANSWER:** Defendant admits having delivered $20,000 to Plaintiff. Defendant denies the remaining allegations of this Paragraph 22.

23.     Despite this, Gordon Law made extensive usage of the contents and materials OneNine provided, including the Subject Photographs, on its commercial website, social media pages, and other platforms to advertise its services and promote its brand ("Infringing Uses"). True and correct exemplars of the Infringing Uses are depicted below:

**ANSWER:** Admit that Gordon Law used photographs from a photoshoot in early 2024. Defendant denies the remaining allegations of this Paragraph 23.

24.     Additional representative, non-inclusive infringing uses are reflected in **Exhibit A** hereto.

**ANSWER:** Defendant states that Exhibit A speaks for itself. Deny the remaining allegations in this Paragraph 24.

25.     Gordon Law has at no point received any authorization or license to exploit the Subject Photographs as set forth above.

**ANSWER:** Deny.

26.     Prior to filing suit, OneNine notified Gordon Law of its failure to deliver the Final Payment in violation of the express terms of the Agreement and that as a result of same, its use of the Subject Photographs amounted to copyright infringement. Gordon Law disputed

that it had breached the Agreement or committed copyright infringement despite never delivering the remaining $20,000 owed to OneNine, necessitating this action.

**ANSWER:** Defendant admits to prior to filing suit Plaintiff contacted Defendant and Defendant disputed any wrongdoing. Defendant denies the remaining allegations of this Paragraph 26.

27.     Gordon Law continued to exploit the Subject Photographs after receiving notice of the infringement.

**ANSWER:** Deny.

## FIRST CLAIM FOR RELIEF

### (Copyright Infringement - Against Gordon Law)

28.     OneNine repeats, re-alleges, and incorporates herein by reference as though fully set forth, the allegations contained in the preceding paragraphs of this Complaint.

**ANSWER:** Defendant repeats and re-alleges the responses to Paragraphs 1-28 of the Complaint, as set forth above, as if fully set forth herein.

29.     Gordon Law had access to the Subject Photographs, including, without limitation, through OneNine.

**ANSWER:** Defendant admits having had access to photographs provided to it by Plaintiff. Defendant denies the remaining allegations of this Paragraph 29.

30.     Gordon Law infringed OneNine's copyrights in the Subject Photographs including by reproducing, publishing, and publicly displaying the Subject Photographs to the public, including without limitation, on the websites and webpages set forth herein, and on other sites and platforms.

**ANSWER:** Deny

31.     Gordon Law additionally infringed on OneNine's copyrights by creating unlawful derivatives works with the Subject Photographs including by editing, cropping, and incorporating same into videos and advertisements.

**ANSWER:** Deny.

32.     Gordon Law failed to satisfy the conditions required to use in any way the Subject Photographs and thus infringed Plaintiffs rights.

**ANSWER:** Deny.

33.     Due to Gordon Law's acts of copyright infringement as alleged herein, Gordon Law has obtained direct and indirect profits it would not otherwise have realized but for its infringement of OneNine's rights in the Subject Photographs. As such, OneNine is entitled to disgorgement of Gordon Law's profits directly and indirectly attributable to Gordon Law's infringement of its rights in the Subject Photographs in an amount to be established at trial.

**ANSWER:** Deny.

34.     OneNine is informed and believes and thereon alleges that Gordon Law committed acts of copyright infringement, as alleged above, that were willful, intentional and malicious, which may further subjects Gordon Law to liability for statutory damages under Section 504 of the Copyright Act in the sum of up to one hundred fifty thousand dollars ($150,000.00) per work infringed and/or preclude Defendant from asserting certain defenses and positions. Within the time permitted by law, OneNine will make its election between actual damages and statutory damages

**ANSWER:** Deny

## SECOND CLAIM FOR RELIEF

### (For Breach of Contract- Against Gordon Law)

35.     OneNine and Gordon Law, as set forth above, entered into the Agreement related to the creation and provision of the Subject Photographs and other content to Gordon Law in exchange for a payment of $40,000 to OneNine.

**ANSWER:** The allegations of this Paragraph 35 call for legal conclusions for which a response is not required. The Service Agreement speaks for itself. To extent a response is required, Defendant denies the allegations of this Paragraph 35.

36.     OneNine discharged all its duties under said Agreement by creating and then providing a redesigned website and accompanying graphics and content, including the Subject Photographs, to Gordon Law.

**ANSWER:** Deny

37.     Gordon Law breached the Agreement by failing to provide the required full Final Payment to OneNine, refusing to pay the second $20,000 installment payment due upon completion and delivery of the redesigned website by OneNine.

**ANSWER:** Deny

38.     The aforementioned breaches have resulted in general and special damages to OneNine, including its loss of the $20,000 owed to it for its services and copyrighted material.

**ANSWER:** Deny

39.     OneNine is further entitled to attorneys fees pursuant to the Agreement.

**ANSWER:** Deny

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for judgment as follows:

**Against All Defendants, and Each and With Respect to Each Claim for Relief:**

a.      That Gordon Law as well as its employees, agents, or anyone acting in concert with them, be enjoined from exploiting OneNine's photography, including without limitation the Subject Photographs, including through, without limitation, an order requiring Gordon Law to remove any content incorporating, in whole or in part, OneNine's photography, including without limitation the Subject Photographs, from any print, web, or other publication owned, operated, or controlled by Gordon Law;

b.      That OneNine be awarded its general and special damages resulting from Gordon Law's infringement, including those available under 17 U.S.C. 504 and 17 U.S.C. 505;

c.      That OneNine be awarded its general and special damages resulting from Gordon Law's breach of the Agreement;

d.      That OneNine be awarded its costs and fees pursuant to the attorneys fees provision of the agreement at issue;

e.      That OneNine be awarded statutory damages and/or penalties under the statutes set forth above, to the extent they are available;

f.      That OneNine be awarded pre-judgment interest as allowed by law;

g.      OneNine be awarded the costs of this action; and

h.      That OneNine be awarded such further legal and equitable relief as the Court deems proper.

      **ANSWER**: Plaintiff alleges legal conclusions for which no response is required. To the

extent a response is required, Defendant denies the allegations and requests.

## **AFFIRMATIVE DEFENSES**

1. Plaintiff has failed to state a claim for copyright infringement pursuant to the Copyright Act upon which relief can be granted.

2. Plaintiff has failed to state a claim for breach of contract upon which relief can be granted.

3. Plaintiff has failed to state a claim for breach of contract because Plaintiff failed to provide the contract it seeks relief from.

4. Plaintiff has failed to establish a valid copyright for which it is entitled to relief.

5. Plaintiff has failed to establish ownership of a valid copyright for which it is entitled to relief.

6. Plaintiff has failed to register a valid copyright in compliance with 17 U.S.C. §411(a) of the Copyright Act.

7. Plaintiff's claims are barred in whole or in part on the grounds Defendant's use of, reproduction of, display of, creation of a derivative work based on any asserted copyright, if any, constitutes fair use under 17 U.S.C. § 107 of the Copyright Act.

8. Plaintiff's claims are barred in whole or in part on the grounds Defendant acquired a license from the Plaintiff or the owner of the asserted copyright.

9. Plaintiff's claims are barred in whole or in part on the grounds that Plaintiff acted unethically or in bad faith regarding the asserted copyright such that it would be unfair to grant relief.

10. Plaintiff's claims are barred in whole or in part by the first sale doctrine.

11. Plaintiff's claims are barred in whole or in part by the doctrine of waiver, acquiescence

and/or estoppel.

12. Plaintiff's claims are barred in whole or in part on the grounds Plaintiff failed to satisfy one or more conditions precedent applicable to any alleged contract between Plaintiff and Defendant.

13. Plaintiff's claims are barred in whole or in part as the result of Plaintiff breaching the applicable contract alleged and therefore any duty of Defendant to perform under the contract was excused.

14. Plaintiff's claims are barred in whole or in part on the grounds that Defendant fully performed any legal or contractual obligation that it may have owed to Plaintiff.

15. Plaintiff has suffered no injury damage as a result of any act or conduct of Defendant.

16. Plaintiff has failed to mitigate the damages alleged to be the result of the acts or conduct of the Defendant.

17. Defendant alleges the Plaintiff's purported causes of action are barred because the loss or damage purportedly sustained by Plaintiff, if any, resulting from any acts of Defendant were not the result of any wrongful or actionable conduct, and the conduct of the Defendant was at all relevant times, lawful, reasonable, and proper.

18. Plaintiff's claims for damages fail in whole or in part because the alleged damages are or will be proven to be speculative and uncertain.

Defendant hereby reserves the right to add to, supplement or amend any and all of their affirmative defenses as new facts become known through discovery and investigation.

## THE GORDON LAW GROUP, LTD'S COUNTERCLAIMS

Counterclaim Plaintiff The Gordon Law Group, Ltd. ("Gordon Law" or "Counterclaim Plaintiff") by its attorneys at Vlahos Law, files its counterclaims against counterclaim Defendant OneNine Design, LLC ("OneNine" or "Counterclaim Defendant), and states as follows:

### NATURE OF ACTION

1.      This is a counter-action against Counterclaim Defendant for breach of contract, breach of implied warranty, and, in the alternative, unjust enrichment, all arising from OneNine's conduct and failure to deliver a custom website design and logos per Gordon Law's specifications.

### THE PARTIES

2.      The Gordon Law Group, Ltd. is an Illinois limited corporation, which maintains a principal place of business at 4709 Golf Rd Suite 1100, Skokie, Illinois 60076.

3.      On information and belief, OneNine Design, LLC is a Texas limited liability company, which maintains a principal place of business at 14555 Dallas Pkwy #100-332 Dallas, Texas 75254.

### JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over Gordon Law's claims under Section 1367(a), because the claims are so related to the federal claims that it forms the same case or controversy under Article III of the United States Constitution. In the alternative, and on information and belief, the Court has jurisdiction pursuant to 28 U.S.C. §1332(a)(1) because this is an action between citizens of different states and the amount in controversy exceeds $75,000.

5.      Jurisdiction and Venue are proper in this district pursuant to the governing law and venue clause of the contract at issue, which provides that "[t]he exclusive venue for any disputes arising out of this Agreement or the performance of this Agreement shall be in a court of competent

jurisdiction in Nashville, Tennessee, and both parties expressly consent to jurisdiction in such courts." *See* Exhibit A.

## STATEMENT OF FACTS

***Gordon Law Hires OneNine***

6.        Defendant Gordon Law is a law firm with a primary focus on federal and state tax matters, including but not limited to tax controversy, compliance, strategic planning, and representation before the Internal Revenue Service and other tax authorities. As a tax-focused firm, Gordon Law's business operations are significantly dependent on the annual tax season, during which it provides time-sensitive legal and advisory services to individuals, businesses, and organizations. The firm's revenue, client engagement, and professional obligations are closely tied to the seasonal demands of tax filings, audits, and related compliance matters, making uninterrupted access to clients and prospects during this period essential to fulfilling its professional responsibilities and maintaining its business continuity.

7.        Seeking to timely modernize its existing website and increase its client outreach, Gordon Law came in contact with OneNine.

8.        During the parties initial discussions as early as November 2024, Gordon Law informed OneNine on the scope of the project involving two websites, Gordon Law and Gordon Tax, creation of logos for each website, the likelihood of and need for multiple revisions, and the need to adhere to a 10 week timeline as initially proposed.

9.        Pursuant to these discussions OneNine provided Gordon Law with an initial proposal that was subsequently modified twice following Gordon Law's additional requests.

10.        On January 9, 2024, OneNine provided Gordon Law with a final modified proposal (the "Proposal"). *See* Exhibit B.

11.     Within the Proposal OneNine made the following representations *inter alia*: (i) "We are highly specialized in creating custom web design and visual branding," (ii) "Our goal is to redesign your website in a way that elevates your entire brand," (iii) "We offer unlimited design revisions until you grant a 100% approval," (iv) "We will design the new logos for Gordon Law and Gordon Tax," (v) "You will have full ownership and access to all source files," (vi) "We guarantee that the entire flow of the website will be user intuitive and logical," (vii) "Turnaround Time 8 to 10 weeks from the day the contract is signed," and (viii) struck a prior reference to completing the project by "New Years" for affirmance that the project would be completed in 8 – 10 weeks *See Id*.

12.     In light of OneNine's representations, on or around January 16, 2024, Gordon Law and OneNine signed a Service Agreement (the "Agreement") whereby OneNine agreed to initially provide Gordon Law with a website (Gordon Law) and two logos meeting Gordon Law's specifications (*See* Exhibit A) and where a second website would be created (Gordon Tax) based on the work completed for Gordon Law based on the parties' prior correspondence.

13.     Pursuant to the terms of the Agreement, (i) OneNine was to meet Gordon Law's specifications and in turn Gordon Law was to "pay $20,000 USD at the signing" of the Agreement and was to pay "$20,000 USD when the project is done." *See* Exhibit A.

14.     As part of the Agreement, OneNine provided a time frame for the completion of the project to be done in a total of 10 weeks and expressly stated it would "rush to have it done". *Id*.

15.     More specifically, the Agreement outlined the following timeline for the project:

Week 1: Whiteboard and layout website.
Week 2-4: Design the website.
Week 5-6: Revisions until website is approved.
Week 7-9: Develop the website.

Week 10: Final edits and push live.

16.     Coupled with this representation, Gordon Law on multiple instances made it clear to OneNine that the work would have to be completed according to Gordon Law's specifications by no later than the beginning of April 2024 to be in time for the peak of the 2024 tax season.

17.     As part of the Agreement, OneNine further expressly agreed and stated, "we are certain the design you receive will help you reach the goals you set forth. If not, we allow unlimited design revisions until the custom design has been approved."*Id*.

18.     As part of the Agreement, OneNine would also provide "content and graphics specifically designed for" Gordon Law and would provide Gordon Law with access and copies of said materials. *Id.*

19.     Pursuant to the Agreement, Gordon Law made the first payment of $20,000 to OneNine.

***OneNine Immediately Shows an Inability to Meet Gordon Law's Specifications
And a Failure to Meet Deadlines***

20.     Almost immediately, OneNine showed an inability to adhere to deadlines or meet Gordon Law's specifications.

21.     The parties held an initial project kickoff meeting on January 23, 2024, which had set the completion date for Gordon Law's project near to March 25, 2025.

22.     By early February 2024, OneNine had provided Gordon Law with initial versions of logos and site design options. Gordon Law had to provide feedback and comments so that OneNine could meet Gordon Law's specifications on time since OneNine's work product had shown an inability to follow the specifications provided to them.

23.     By February 14, 2024, the parties held a meeting where Gordon Law made clear to

OneNine's owner that the project manager OneNine had assigned to Gordon Law's matter was not meeting the needs of Gordon Law's project and OneNine was falling behind on the agreed to timeline.

24.     Throughout the remainder of February 2024 and March 2024 Gordon Law worked with OneNine to provide feedback and comments to aid OneNine in reaching its completion goal to no avail.

25.     By April 2, 2024, the website remained unfinished and Gordon Law requested OneNine assign a new project manager to their matter as all deadlines had been missed and a pattern of being unable to adhere to Gordon Law's specifications had been shown.

26.     On April 4, 2024, the parties' respective owners had to engage in a subsequent meeting in order get the project "back on track". From this meeting, OneNine agreed to replace the assigned project manager, provide a detailed timeline for completion, would schedule check-ins on the status of the project, and was to finish all work by April 2024.

27.     By April 9, 2024 a new project manager had been assigned, however, no check-ins were provided, no project timeline was provided, and OneNine failed to complete the project by April 2024.

28.     Instead, throughout the remainder of April, May, and June, Gordon Law continued to work with OneNine in good faith but nonetheless had to dedicate dozens of hours toward providing detailed feedback outlining the multiple issues with OneNine's work product including failure to meet Gordon Law's specifications, issues with inconsistent fonts and text sizes, and the multiple misspellings throughout the webpages drafted such as use of "GORDAN" as opposed to "GORDON," the correct name of the firm.

29.     On May 23, 2024, the owner for OneNine sent Gordon Law an invoice for $20,000

but made it clear: "Obviously this isn't due until it goes live."

30.     By mid-June 2024, Gordon Law was presented with an unfinished design that was unusable along with the multiple requested revisions that remained unresolved.

31.     Indeed, by June 25, 2024, several of Gordon Law's requested edits remained unaddressed and photos on the drafted webpages still improperly contained watermarks.

***OneNine Breaches the Agreement and Demands Payment Prior to the Project's Completion***

32.     Despite the website not being finished, the revisions Gordon Law requested not being completed,  OneNine's agreement to provide "unlimited design revisions until the custom design has been approved," and OneNine's owner previously making clear the final payment would not be due until the site goes live,  OneNine demanded a payment of $20,000 from Gordon Law in June 2024, July 8, 2024, and July 9, 2024.

33.     On July 9, 2025, Gordon Law reminded OneNine that the latest work product presented had missed the mark and even had failed to meet the scope of the services agreed to—Gordon Law had yet to be completed and work on Gordon Tax had yet to begin. Therefore, pursuant to the Agreement, no further payment obligation was required from Gordon Law.

34.     In response, rather than continue working with Gordon Law and performing under the Agreement, OneNine instead chose to threaten Gordon Law and its owner by threatening to publicly discuss its grievances, release private conversations between the parties, and share the same across multiple social media sites such as YouTube, LinkedIn, Instagram, and X.

35.     Finally, on June 16, 2024, the owner for OneNine reiterated its prior threats by stating:

> "Few things I wanna make clear . . . I was informing you of what I am about to do, so you
>
> have a chance to remedy the situation . . . Yes, there are plenty of ways to move forward.

We're on standby to get Gordon Tax done and push both sites live . . . So ball is in your court on how you want to move forward, but the next step is for you to pay your outstanding invoice."

36.     In sum, despite OneNine's repeated failure to meet all deadlines it set, adhere to Gordon Law's specifications and revision requests, threats of releasing private conversations and recordings, and own acknowledgement that the project is incomplete by stating it is "on standby **to get Gordon Tax done** and **push both sites live,**" OneNine demanded immediate payment from Gordon Law against the black letter of the Agreement entered into.

37.     As a result of OneNine's failures Gordon Law did not have its desired website live during the tax season and had to engage a third party to create and complete its website from scratch.

38.     Since then, OneNine's counsel sent a letter to Gordon Law reiterating OneNine's Demands in August 2024. Thereafter, in September 2024 Gordon Law's counsel responded to OneNine's claims refuting any wrongdoing on behalf of Gordon Law. OneNine confirmed receipt of that response and indicated it would revert back with its position. OneNine never did. Instead, rather than continue efforts toward a resolution or provide Gordon Law with the completed websites, OneNine has chosen to initiate this suit.

## <u>COUNT I: BREACH OF CONTRACT</u>

39.     Gordon Law hereby incorporates by reference the allegations in Paragraphs 1 through 38 as though fully set forth herein.

40.     On or around January 16, 2024 OneNine and Gordon Law entered into the Service Agreement.

41.     In entering into the Service Agreement, Gordon Law relied on representations made

in the Proposal.

42.     OneNine understood that Gordon Law is a tax firm and would need its project completed in time for the 2024 tax season.

43.     Gordon Law fully performed its duties under the contract.

44.     Specifically, Gordon Law tendered the initial $20,000 payment to OneNine.

45.     Gordon Law also fully performed by submitting its revisions to OneNine in a timely and complete manner.

46.     Pursuant to the Agreement, OneNine was obligated to allow Gordon Law "unlimited design revisions until the custom design has been approved."

47.     OneNine breached the contract by refusing to fulfill all website design revisions Gordon Law requested or provide Gordon Law with finished websites.

48.     Pursuant to the Agreement, OneNine was obligated to complete the websites' designs and push the websites live by the beginning of April 2024.

49.     This time frame was crucial to Gordon Law's business because a working website was necessary to have live by April 15, 2024, tax day.

50.     OneNine was aware of this necessary and crucial deadline.

51.     OneNine's delays and poor workmanship breached the time frame laid out in the Agreement by several months and Gordon Law never received fully completed website designs of which it approved.

52.     Pursuant to the Agreement, OneNine was only entitled to the final $20,000 payment on the condition that "the project is done, before the website goes live."

53.     Despite the websites' design still needing substantial and material revisions, which OneNine refused to complete, and OneNine's owners prior representation that payment would only

be due once the website is live, OneNine demanded the final $20,000 payment.

54.    This demand for payment was made in breach of the Agreement terms because the project was not done, had not been approved, and was not made live.

55.    As a result of OneNine's breach of contract, Gordon Law had to engage a third party to create a new website from scratch and incurred significant additional expenses and attorney time that would have otherwise been devoted to working on client matters or other firm needs.

56.    This third party satisfactorily completed a website design and Gordon Law launched its website on November 4, 2024

57.    The third-party cost around $15,000 for design and launch of both Gordon Tax and Gordon Law.

58.    Additionally, the Agreement stipulates that "[i]n any legal action between the parties concerning this Agreement, the prevailing party shall be entitled to recover reasonable attorneys' fees and costs." As such, Gordon Law requests its reasonable attorney's costs and fees be awarded, pursuant to the Agreement.

59.    OneNine is in possession of the Service Agreement, Proposal, and additional communication that collectively constitute the contract.

## COUNT II: BREACH OF IMPLIED WARRANTY
## (FITNESS FOR A PARTICULAR PURPOSE)

60.    Gordon Law hereby incorporates by reference the allegations in Paragraphs 1 through 59 as though fully set forth herein.

61.    OneNine knew or had reason to know that Gordon Law sought new website designs for its tax law firm.

62.    OneNine knew or had reasons to know that Gordon Law needed complete and

functioning websites by tax day 2024—April 15, 2024—because of the nature of its practice.

63.     OneNine knew or had reason to know that Gordon Law, a law firm, was relying on OneNine's particular skill and judgment to design and launch the new website designs.

64.     The website designs provided to Gordon Law failed to substantially comply with its requested specifications.

65.     OneNine refused to implement Gordon Law's revisions which OneNine was required to complete pursuant to the Agreement.

66.     Gordon Law was never presented with final website designs of which it could approve in order to finalize the project.

## COUNT III: UNJUST ENRICHMENT (IN THE ALTERNATIVE)

67.     Counter-Plaintiff hereby incorporates by reference Paragraphs 1-38  above in this Count III as though fully set forth herein.

68.     OneNine received and retained $20,000 paid by Gordon Law.

69.     As detailed herein, OneNine's retention of these payments is unjust because Gordon Law received nothing of value in exchange for the payments made to OneNine.

70.     Given the circumstances detailed herein, OneNine has been unjustly enriched and Gordon Law has been damaged in the amount of at least $20,000  plus its reasonable attorneys costs and fees, but the total amount is to be proven at trial.

71.     It would be unfair and unjust to allow OneNine to retain the benefit Gordon Law bestowed upon it.

## PRAYER FOR RELIEF

WHEREFORE, Counterclaim Plaintiff accordingly and respectfully prays for judgment against Counterclaim Defendant as follows: (1) that Counterclaim Plaintiff be awarded

compensatory damages in the amount of $75,000, plus pre-judgment interest; (2) that Counterclaim Plaintiff be awarded consequential damages, including the cost to engage a second developer and Gordon Law's valuable attorney time to oversee the development project for a second time, in an amount to be determined at trial; (3) that Counterclaim Plaintiff be awarded punitive damages in the amount to be determined at trial; (4) that Counterclaim Plaintiff be awarded its reasonable attorneys costs and fees; and (5) for such other relief to which Counterclaim Plaintiff may be entitled and for all such further relief as equity and justice may require and this Court deems proper.

## JURY DEMAND

Counterclaim Plaintiff hereby demands a trial by jury.

Date: October 3, 2025                    Respectfully submitted,

                                          */s/ Chris Vlahos*
                                          Chris Vlahos

                                          Chris Vlahos (TN Bar No. 20318)
                                          Vlahos Law
                                          1030 16th Ave 5, 2nd Floor
                                          Nashville, TN 37212
                                          chris@vlahos-law.com
                                          (615) 400-3213

                                          *Attorney for Defendant / Counter-Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

On October 3, 2025, I filed this document with the clerk of court for the U.S. District Court, Middle District of Tennessee, using the CM/ECF System which will send notification of this filing to all counsel of record.

<u>/s/ Chris Vlahos</u>
Chris Vlahos